# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 20, 2013 Session

## STATE OF TENNESSEE v. STERLING JEROME DAVIS

**Appeal from the Criminal Court for Monroe County**
**No. 10-332     Amy A. Reedy, Judge**

**No. E2012-01398-CCA-R3-CD - Filed November 14, 2013**

The defendant, Sterling Jerome Davis, was convicted by a Monroe County jury of possession of 300 grams or more of cocaine with the intent to sell, a Class A felony; possession of more than one-half ounce but less than ten pounds of marijuana with intent to sell, a Class E felony; and possession of drug paraphernalia, a Class A misdemeanor.  He was sentenced by the trial court as a Range II offender to concurrent terms of forty years at 35%  for possession of cocaine with the intent to sell, four years at 35% for possession of marijuana with the intent to sell, and eleven months, twenty-nine days for possession of drug paraphernalia.  The defendant raises the following issues on appeal:  (1) whether the trial court erred in denying his motion to suppress evidence; (2) whether the trial court improperly limited defense counsel's questioning of venire members; (3) whether the evidence is sufficient to sustain the convictions; (4) whether the trial court erred by admitting into evidence the defendant's petition for a hearing on a forfeiture warrant; (5) whether the prosecutor engaged in improper closing argument; and (6) whether the trial court imposed an excessive sentence.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ROGER A. PAGE, J., joined.

C. Richard Hughes, Jr., District Public Defender; and Jeanne L. Wiggins, Assistant Public Defender, for the appellant, Sterling Jerome Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Robert Steven Bebb, District Attorney General; and James Harvey Stutts, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

On September 5, 2010, detectives of the Monroe County Sheriff's Department executed a search warrant at the Madisonville residence of the defendant. Among the items uncovered in the search were 305.8 grams of cocaine, 428.3 grams of marijuana, $154,844 in cash, plastic baggies, a vacuum pack "FoodSaver" machine, four sets of scales, and a small spoon. The defendant was subsequently indicted for possession of 300 grams or more of cocaine with the intent to sell, possession of more than one-half ounce but less than ten pounds of marijuana with the intent to sell, and possession of drug paraphernalia.

## Suppression Hearing

Prior to trial, the defendant filed a motion to suppress the results of the search, arguing, among other things, that the search warrant was unsupported by probable cause. At the suppression hearing, Investigator Lewis Jones of the Tenth Judicial District Public Defender's Office identified photographs he had recently taken of the defendant's brick residence on Third Street, the adjacent mobile home, and the common driveway, which were admitted as exhibits to the hearing.

Kenneth Cable, an employee of the waste management company that collected trash from the area's homes, testified that the trash receptacles for both homes were regularly placed together for pickup in the corner of the mobile home's yard. He said the trash receptacles were identical and that, other than dumping the trash out, he had no way of knowing which trash belonged to which residence.

Detective Conway Mason of the Monroe County Sheriff's Department identified copies of the search warrant and the affidavit he had prepared in support of the search warrant, which were admitted as an exhibit to the hearing. Among other things, the affidavit contained the following pertinent information:

3.       For the past several years your affiant has been receiving information of illegal narcotics sales at [the defendant's residence]. The information contained herein was derived from my own investigation, conversations with other law enforcement officials, witness statements from neighbors or confidential sources of information unless otherwise indicated.

4.       On July 21st 2010 your affiant conducted a trash pull from the

discarded trash of [the defendant's residence]. Upon inspecting the contents of the discarded trash I discovered a marijuana stem and several plastic baggies. On or around July 29th, 2010, I was contacted by a confidential source of information herein referred to as SOI 1. SOI 1 stated that he/she was present, on this date, at [the defendant's] residence. SOI 1 stated that once inside the residence he/she observed a marijuana roach/blunt on a desk inside the residence. Within three days of September 5th, 2010 your affiant was contacted again by SOI 1 who stated that he/she was present with [sic] these three days at the residence [of the defendant] and observed an amount of marijuana inside the residence.

5. SOI 1 is a proven credible and reliable source whose information has led to the discovery of marijuana in the past. SOI 1 has assisted your affiant in investigations in the past which ha[ve] le[d] to the arrest and convictions of individuals for possessing or selling illegal drugs. SOI 1 has shown knowledge of identifying marijuana through interviews and conversations with your affiant.

Detective Mason testified that he pulled the trash from the side of the driveway on which the mobile home was located because Cable told him that the residents of both homes placed their trash together in that area. He said there was nothing in the trash to indicate exactly which residence it had come from. He believed, however, that it was the defendant's trash because he had never received any information about the resident of the mobile home selling marijuana. He acknowledged that there was nothing in the affidavit to indicate that the defendant was present at the time the confidential informant saw the marijuana. He further acknowledged that the affidavit stated only that the informant saw "an amount of marijuana" without specifying how much. On cross-examination, he testified that the statements he made in his affidavit were true.

On October 7, 2011, the trial court entered an order overruling the motion to suppress. The court found that there were no false statements in the affidavit made either intentionally to deceive or with a reckless disregard for their truth and that the proof showed that the detective conducted a trash pull of trash that he believed came from the defendant's residence. The court further found that the information in the affidavit was not stale and that it was sufficient to establish probable cause for the search.

**Trial**

Detective Mason testified that he lived in the vicinity and was familiar with the

defendant's Third Street residence because he drove past it almost every day on his way to work. He said that the defendant and another individual were in the living room when he and his fellow officers arrived on September 5, 2010, to execute the search warrant. He stated that they first secured the defendant and his companion, cleared the residence, and then searched the home in a systematic fashion. Among other items, they uncovered and seized a large amount of marijuana and cocaine, some of which was packaged in individual plastic sandwich bags; $154,844 in cash, which was in $100 bills bundled together in $5000 increments; plastic baggies; a FoodSaver machine; and four sets of scales. Detective Mason explained that the presence of scales, plastic baggies, and the FoodSaver machine, which was used to provide air-tight packaging to preserve freshness, indicated to him that the drugs were being packaged for resale. Most of the seized items were found in a back bedroom in which there was a photograph of the defendant on the wall, a photograph of the car that Detective Mason had regularly seen the defendant driving, a box of checks in the defendant's name, and a Sentry safe containing a wallet with credit cards in the defendant's name, the defendant's social security card, two of the defendant's expired driver's licenses, and various other papers and photographs. Detective Mason testified that he found the car he had seen the defendant driving, a 1997 Nissan, outside on the property and seized it in accordance with the drug forfeiture process. There was also a locked storage building on the property, which he searched after finding the key to the lock on the defendant's key ring. Detective Mason described the forfeiture process and identified the defendant's signed petition for a hearing on the seizure of property in which the defendant listed himself as the owner of the $154,844 in cash. The petition was then admitted as a trial exhibit.

On cross-examination, Detective Mason acknowledged that he was the one who identified the residence as the defendant's, that the address on the defendant's checks was different from the address of the Third Street residence they searched, and that his research revealed that another man was the owner of the Third Street residence. He testified that the room in which they found most of the seized items was "pretty messy" with "quite a bit of stuff" in it, including boxes and clothing stacked against the wall. He conceded that they did not attempt to take any fingerprints from any of the surfaces or items in the home. He testified that he was unaware that the other individual in the home with the defendant at the time he executed his search, Stephen Yates, was on probation at the time. He was, however, aware of Mr. Yates's general background. He said that none of the various pieces of identification in the defendant's name was dated later than 2006. At the request of defense counsel, he identified the defendant's current driver's license, which was admitted as an exhibit and which listed the defendant's address as the same as that on the defendant's checks. He said he believed that was the address of the defendant's mother.

Linda Wilder, a forensic technician with the Tennessee Bureau of Investigation ("TBI") testified that she received the substances submitted by Detective Mason to the TBI

laboratory for analysis and placed them in a secure vault to await assignment to a forensic scientist.

TBI Agent Carl Smith, the forensic scientist who analyzed the substances submitted by Detective Mason, identified his Official Forensic Chemistry Report, which was admitted as an exhibit and showed that he determined that the three samples of white powder submitted consisted of cocaine weighing 273.2 grams, 20.1 grams, and 12.5 grams, respectively. He testified that he determined that the largest sample of green plant material that was submitted for analysis was marijuana with a weight of 428.3 grams. He stated that the gross weight of the other samples of plant material was 3.2 pounds. He then explained that he did not analyze those additional samples because the total weight of all the plant material was less than 10 pounds and therefore would not have moved the offense to the next felony level.

Vivian Smith, the defendant's sister, testified in the defendant's behalf that she filed a claim for the Nissan automobile that had been seized in the case. She said she paid two separate fees of $350 to cover the claim for the automobile and the claim for the cash, but she had no interest in the cash and simply paid on the defendant's behalf because he was in jail at the time.

Thomas Latham, the defendant's father, testified that he arrived at the Third Street residence during the time that the police were executing their search. He said that he stayed until the police left the premises and that he saw them bring a handcuffed Stephen Yates outside and place him into a van as they were leaving. On cross-examination, he testified that he was at the home for approximately three hours and never saw the defendant.

The defendant elected not to testify and rested his case without presenting any further proof. Following deliberations, the jury convicted him of the indicted offenses.

### Sentencing Hearing

At the sentencing hearing, the State introduced as exhibits the defendant's presentence report and certified copies of the prior convictions on which the State relied to establish the defendant's classification as a Range II offender. Danny Isbill, the Board of Probation and Parole officer who prepared the presentence report, described the investigation he conducted of the defendant's background and identified a certified copy of the defendant's federal conviction, a summons for a probation violation, and a copy of the warrant for violation of the federal sentence, which were admitted as a collective exhibit.

On cross-examination, he testified that his investigation revealed that the defendant

had graduated from Sweetwater High School and for a period of time attended the University of Tennessee at Chattanooga on a scholarship. The defendant's reported employment history included self-employment as a personal trainer, at MB Sewing as an inspector, and at Havco Wood Products. He was, however, unable to confirm the information. The defendant had five children, all of whom he supported. The defendant's revocation warrant in his federal case charged him with having twice tested positive for marijuana, having attempted to bribe the probation officer to not report the positive drug screen in one of those instances, and having been arrested and charged with possession of cocaine for resale. Isbill acknowledged that the cocaine charge had been dismissed, leaving the defendant with only technical violations.

Pastor James Wilks of the Goodfriend Baptist Church in Madisonville testified on the defendant's behalf that he had known the defendant's entire family for the past twenty-one years and that the defendant had been an occasional attendee at the church during that time. In the past year, however, he had witnessed the defendant "grow through the power of God." He said the defendant now regularly attended church with his two young children and was an active member of the congregation, assisting with vacation bible school for the children and bringing new members into the church. He, therefore, requested that the court exhibit mercy in sentencing in order to allow the defendant to remain in the community to serve as a positive influence and example to his children.

Minister Sandra Fay Wilks of the Goodfriend Baptist Church testified that the defendant was a devoted parishioner of the church and that he, his sister, and his fiancée had initiated the church's vacation bible school program. She, like Pastor Wilks, expressed her belief in the defendant's reformation of character and requested that the court exhibit mercy in sentencing.

Jeffrey Richards testified that he had met the defendant in the gym approximately six and a half years earlier when the defendant, a "good hearted" and "courteous" person, had taken the time to show him how to use the weight equipment. He said he had observed the defendant carefully over the years, witnessed his caring and helpful nature, and believed that justice would best be served by allowing the defendant to remain in the community to teach young people not to follow the same paths he had.

Vivian Darlene Smith, the defendant's older sister, identified petitions signed by members of the community requesting leniency in the defendant's sentencing, which were admitted as a collective exhibit to the hearing. Smith testified that the defendant's two oldest children were semi-self-sufficient but that his three youngest children needed the defendant, which was why she was pleading with the court to exhibit mercy in sentencing. She further testified that she had recently had conversations with the defendant about God and that she

believed that he was experiencing a genuine reformation and was sincere in his desire to change his life. Upon questioning by the court, Smith testified that the defendant had never been married to any of the four mothers of his children.

Thomas Latham, the defendant's father, also requested leniency in sentencing, testifying that he had witnessed a change in the defendant in the past year and believed that he was "beginning now to accept the responsibility" for his actions.

At the conclusion of the hearing, the trial court sentenced the defendant as a Range II offender to concurrent terms of forty years at 35% for the possession of cocaine with the intent to sell conviction, four years at 35% for the possession of marijuana with the intent to sell conviction, and eleven months, twenty-nine days for the possession of drug paraphernalia conviction.

## ANALYSIS

### I. Denial of Motion to Suppress Evidence

The defendant contends that the trial court erred by denying his motion to suppress evidence, arguing that Detective Mason's affidavit contained a false statement "intentionally and/or recklessly made without regard to its truthfulness." The defendant further argues that the other information in the affidavit was insufficient, standing alone, to establish probable cause for the search. In support, he cites, among other things, the fact that there is no mention in the affidavit of the defendant having been present in the home at the time the confidential informant saw the marijuana, the amount of marijuana witnessed by the informant, or that any type of drug transaction took place during the informant's visit. The State responds by arguing that the trial court properly denied the defendant's motion to suppress after finding that Detective Mason's affidavit contained no intentionally or recklessly made false statements and that the information contained in the affidavit was not stale and established a nexus between the drug sales and the residence. We agree with the State.

When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. However, the

application of the law to the facts found by the trial court is a question of law and is reviewed *de novo*. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The defendant first argues that the trial court should have granted his motion to suppress because the affidavit contained either an intentionally or recklessly made false statement, *i.e.* that Detective Mason found a marijuana stem and baggies in the defendant's trash. A false statement in an affidavit may be sufficient to invalidate a search warrant, as our supreme court explained in State v. Little, 560 S.W.2d 403 (Tenn. 1978):

> [T]here are two circumstances that authorize the impeachment of an affidavit sufficient on its face, (1) a false statement made with intent to deceive the Court, whether material or immaterial to the issue of probable cause, and (2) a false statement, essential to the establishment of probable cause, recklessly made. Recklessness may be established by showing that a statement was false when made and that affiant did not have reasonable grounds for believing it, at that time.

Id. at 407. "In order to be 'essential to the establishment of probable cause,' the false statement must be the only basis for probable cause or if not, the other bases, standing alone, must not be sufficient to establish probable cause." State v. Norris, 47 S.W.3d 457, 469 n.4 (Tenn. Crim. App. 2000) (citing State v. Tidmore, 604 S.W.2d 879, 882 (Tenn. Crim. App. 1980)).

In overruling the motion to suppress, the trial court found the witnesses to be credible and that no false statements were made intentionally to deceive the court. The court further found that the defendant had not proved by a preponderance of the evidence that "there were any reckless false statements within the affidavit . . . essential to establish probable cause."

The record supports the trial court's findings. At the suppression hearing, Detective Mason testified that he learned from the trash collector that the trash for both homes was placed together on the mobile home side of the shared driveway and that it was from that location that he pulled the trash in which he found the marijuana stem and plastic baggies. He also explained that he believed the items came from the defendant's trash because he had never received any information about the resident of the mobile home selling marijuana. We agree with the State that his belief was reasonable given the additional information he had from other sources, including the confidential informant, about the defendant's drug activity. We conclude, therefore, that the trial court did not err in finding that the defendant failed to show that the affidavit contained either an intentional or reckless false statement.

We further conclude that the trial court did not err in finding that the information contained in the affidavit was not stale and that it established a nexus between the criminal activity and the defendant's residence. Under both the Tennessee and United States Constitutions, no search warrant may be issued except upon probable cause, which "requires reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." State v. Smotherman, 201 S.W.3d 657, 662 (Tenn. 2006). Tennessee requires a written and sworn affidavit, "containing allegations from which the magistrate can determine whether probable cause exists," as "an indispensable prerequisite to the issuance of a search warrant." State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998). The affidavit must contain more than mere conclusory allegations on the part of the affiant. Id. The standard to be employed in reviewing the issuance of a search warrant is "whether the issuing magistrate had 'a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" Smotherman, 201 S.W.3d at 662 (quoting State v. Ballard, 836 S.W.2d 560, 562 (Tenn. 1992)).

In State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989), our supreme court adopted the two-pronged Aguilar-Spinelli test for determining whether an affidavit that relies upon allegations supplied by a criminal informant is sufficient to establish probable cause. Under the first, "basis of knowledge" prong of the test, "facts must be revealed which permit the magistrate to determine whether the informant had a basis for his information that a certain person had been, was or would be involved in criminal conduct or that evidence of crime would be found at a certain place." State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Under the second, or "veracity" prong of the test, "facts must be revealed which permit the magistrate to determine either the inherent credibility of the informant or the reliability of his information on the particular occasion." Id. (citation omitted). Although independent police corroboration may compensate for deficiencies in either prong, each prong of the test must be satisfied to establish probable cause. Smotherman, 201 S.W.3d at 662 (citing State v. Williams, 193 S.W.3d 502, 507 (Tenn. 2006); Jacumin, 778 S.W.2d at 436.

In denying the motion to suppress the results of the search, the trial court found that the confidential informant's "knowledge and veracity [were] established within the affidavit" and that the information the informant provided established a nexus between the crime and the place to be searched. The record supports these findings. Detective Mason's affidavit provided information about his having learned of drug activity at the defendant's residence through his own investigation and his communication with fellow law enforcement officers, neighborhood residents, and confidential sources of information. It also provides information about his past use of the confidential informant and the informant's having provided him with reliable information that led to the discovery of illegal drugs and the arrests and convictions of drug traffickers. Finally, it contains specific information about the

informant's two recent visits to the defendant's home and the drugs that he or she witnessed while present in the home. We do not find the fact that the affidavit fails to mention that the defendant was present at the time the informant saw the drugs, or that a drug transaction took place during the informant's visit, fatal to the affidavit's establishment of probable cause. We conclude, therefore, that the affidavit contained sufficient information to establish probable cause for the search. Accordingly, we affirm the trial court's denial of the motion to suppress the results of the search.

## II. Voir Dire

The defendant contends that the trial court violated his rights to an impartial jury and due process of law by limiting defense counsel's conversation with the venire members with respect to the use of confidential informants in drug cases. The State disagrees, arguing that the trial court acted within its discretion and that the defendant has not shown any prejudice to his case from the trial court's actions. We, again, agree with the State.

It is well-settled that the trial court is vested with wide discretion in controlling the examination of potential jurors and that its actions in that regard will not be disturbed absent a showing of an abuse of discretion. See State v. Reid, 164 S.W.3d 286 (Tenn. 2005); State v. Jefferson, 529 S.W.2d 674 (Tenn. 1975); State v. Cox, 644 S.W.2d 692 (Tenn. Crim. App. 1982). "The ultimate goal of voir dire is to [e]nsure that jurors are competent, unbiased, and impartial." State v. Cazes, 875 S.W.2d 253, 262 (Tenn. 1994).

The action of which the defendant complains took place after defense counsel was questioning venire members about their knowledge and opinion of the government's use of confidential informants. A venire member interrupted with a question about entrapment, and the following exchange took place:

1ST MALE JUROR: I have a question, please.

[DEFENSE COUNSEL]: I'm sorry.

1ST MALE JUROR: Back to the issue of confidential informant, could you please describe the idea of entrapment versus –

[PROSECUTOR]: May we approach, your Honor?

THE COURT: Yes.

(COUNSEL APPROACHED THE BENCH AND THE

-10-

FOLLOWING TOOK PLACE OUT OF THE HEARING OF PROSPECTIVE JURORS:)

[PROSECUTOR]: Your Honor, at this point I want to object to any form of inquiries on this line. This is not a confidential informant case, it's a search warrant. The issue of the informant was resolved when your Honor ruled on the defense motion to suppress. The warrant is good and that was our authority to go in. It's not a sale or a deliver, it's possession.

[DEFENSE COUNSEL]: I can still ask him about his investigation and –

[PROSECUTOR]: Not as to the background of the search warrant. That's been decided.

[DEFENSE COUNSEL]: I can still ask him about his investigation –

[PROSECUTOR]: Well, just make sure you want to know the answers, but I object to any further inquiry about entrapment and all that. This is not a sale or delivery. They went in his house, the dope was in his house, the money was in his house. There –

[DEFENSE COUNSEL]: He brought it up –

[PROSECUTOR]: There is no CI involved.

THE COURT: Brought what up?

[DEFENSE COUNSEL]: (Indiscernible) You might explain to him –

THE COURT: I'm not going to explain facts in the case[,] and quite frankly[,] all I know is what I've heard in the motion to suppress and the other motions that we had the other day. This is not a case about a buy and so just be careful how you move with this.

(THIS CONCLUDED THE CONFERENCE AT THE BENCH
AND THE FOLLOWING TOOK PLACE IN THE HEARING
OF THE PROSPECTIVE JURORS:)

[DEFENSE COUNSEL]: Is there anything about your opinions . . . that you feel like regarding of the conversation we have that you feel like you could not listen to the proof in this case and be fair?

1ST MALE JUROR: I don't quite know how to address that. It would very [sic] depend upon the idea of entrapment, enticement, aid or –

THE COURT: Let me help out at this point. If entrapment is relevant to this case, if it's raised by the facts and the proof, anything like that[,] I will instruct you about at the conclusion of the case. I will give you all the legal instructions so that, and as I said statements and remarks of counsel are intended to help you[,] but they may not be supported by the facts and the law in this case. So if there is an issue of entrapment you will get the full instruction of the law so that you can consider that.

Thereafter, voir dire continued with no further objections raised and a jury was ultimately impaneled and sworn. There is nothing in the record to show which venire members were selected for the jury or whether either counsel used a peremptory challenge to strike the juror who asked about entrapment.

We find no abuse of discretion in the trial court's handling of this matter. The trial court responded appropriately to the venire member's questions by instructing the venire that the court would issue jury instructions on entrapment should it prove relevant under the facts in the case. Furthermore, the defendant has not shown that the venire member who raised the question was prejudiced against him, or that he was actually impaneled as a juror. We conclude, therefore, that the defendant is not entitled to relief on the basis of this issue.

### III. Sufficiency of the Evidence

The defendant next challenges the sufficiency of the evidence in support of his convictions, arguing that the State failed to present sufficient proof to show his possession of the drugs or his control over the home. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn.

R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To sustain the defendant's conviction for possession of 300 grams or more of cocaine with the intent to sell, the State had to prove beyond a reasonable doubt that the defendant knowingly possessed 300 grams or more of cocaine with the intent to sell it. Tenn. Code Ann. § 39-17-417(a)(4), (j)(5) (2010). To sustain the conviction for possession of marijuana with the intent to sell, the State had to prove beyond a reasonable doubt that the defendant knowingly possessed not less than one-half ounce nor more than ten pounds of marijuana with the intent to sell. Id. § 39-17-417(a)(4), (g)(1). Finally, to sustain the conviction for possession of drug paraphernalia, the State had to prove beyond a reasonable doubt that the defendant possessed with intent to use drug paraphernalia "to plant, propagate, . . . test, analyze, pack, repack, store, contain, . . . or otherwise introduce into the human body a controlled substance[.]" Id. § 39-17-425(a)(1).

Possession of drugs may be constructive as well as actual. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Constructive possession

requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Tennessee Code Annotated section 39-17-419 provides that "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."

In support of his argument that the State failed to prove his possession of the drugs and drug paraphernalia, the defendant cites a number of facts, including that none of the pieces of identification in his name were recent, that the address on his checks was different from the address of the home searched, that he did not own the home, that the back bedroom containing the cash and his identification had a cluttered, "storage room" appearance, and that no fingerprints were obtained linking him to the contraband items in the home.

The evidence, however, when viewed in the light most favorable to the State, is more than sufficient to sustain the defendant's convictions. When the officers arrived to execute the warrant, the defendant was sitting inside the living room with a companion. A photograph of the automobile the defendant regularly drove was in the back bedroom, and the automobile itself was parked outside the residence. The bedroom also contained the defendant's checks; over $150,000 in cash, of which the defendant claimed ownership by signing the petition for a hearing on the forfeiture of property; and a safe with the defendant's social security card, credit and bank cards, two old driver's licenses, and various other papers and records in the defendant's name. From all this evidence, a rational jury could have reasonably found that the defendant possessed the marijuana, cocaine, and drug paraphernalia found in the home. A rational jury could have further reasonably found, based on the large amounts of cocaine, marijuana, and cash and the presence of plastic baggies, scales, and FoodSaver machine, that the defendant possessed the drugs with the intent to sell them. Accordingly, we conclude that the evidence is sufficient to sustain the defendant's convictions.

## IV. Admission of Defendant's Petition For a Hearing on Forfeiture Warrant

The defendant contends that the trial court erred by admitting into evidence his petition for a hearing on the forfeiture of the cash, arguing that it was inadmissable hearsay. The State disagrees, arguing that the trial court properly admitted the evidence as the admission of a party opponent. We agree with the State.

Hearsay is a "statement, other than one made by the declarant while testifying at the

trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Generally, hearsay statements are inadmissible unless they fall under one of the recognized exceptions to the hearsay rule. Tenn. R. Evid. 802. One such exception to the rule against hearsay is the one under which the trial court ruled the evidence admissible, "Admission by Party-Opponent," which is defined in pertinent part as "[a] statement offered against a party that is (A) the party's own statement in either an individual or a representative capacity[.]" Tenn. R. Evid. 803(1.2).

On appeal, the defendant appears to concede that he signed the petition and that the document therefore satisfied the party admission exception to the rule against hearsay. Instead, he asserts that the evidence "would necessarily need to survive both a business record exception as well as an admission by a party opponent" to be admissible at trial. In support, he points out that neither he nor Detective Mason prepared the document, "as it was a form purporting to be for use by the Department of Safety." The defendant appears to argue that the trial court erred by accepting the State's argument that the evidence was admissible as the admission of a party opponent without conducting any analysis of whether it also fell within the business records exception.

The defendant is not entitled to relief on the basis of this issue. The relevant information contained in the document, that the defendant claimed an ownership interest in the seized cash, was supplied by the defendant himself rather than by a person with a duty to record such information during the course of regularly conducted activity. See Tenn. R. Evid. 803(6). As such, it was unnecessary for the evidence to satisfy the business records exception in order to be admissible at trial. We conclude, therefore, that the trial court properly admitted the evidence.

### V. Closing Argument

The defendant next contends that the prosecutor engaged in improper closing argument by commenting on the fact that defense counsel did not question defense witnesses as to where the defendant lived, which "unconstitutionally shifted the burden of proof" to the defendant. The State argues that the comments were not improper and do not entitle the defendant to a new trial. We agree.

During closing argument, defense counsel argued that the State had failed to prove that the defendant lived at the residence or was in either actual or constructive possession of the drugs and drug paraphernalia. As part of her argument, defense counsel made the comment that Detective Mason never mentioned having investigated who lived at the address listed on the defendant's checks and current driver's licenses, despite the fact that it would have been easy for him to do so. During rebuttal, the prosecutor responded with the

following:

> What do they show you that says he lives there? Well, do you remember the two witnesses the defense called? His sister. Did they ask her where he lived? No. His father? If that's so important, if that's a contested issue why would you not ask daddy, "Where does your son live?" And they didn't ask –

At that point, defense counsel objected, arguing that the State's comments were an attempt "to put the burden on the defendant regarding the issue of his residency and ultimately his possession of the seized items under the State's theory." The trial court overruled the objection without further comment, and the prosecutor moved on to other topics.

Tennessee courts "have traditionally provided counsel with a wide latitude of discretion in the content of their final argument" and trial judges with "wide discretion in control of the argument." State v. Zirkle, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995). A party's closing argument "must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999). The five generally recognized areas of prosecutorial misconduct in closing argument occur when the prosecutor intentionally misstates the evidence or misleads the jury on the inferences it may draw from the evidence; expresses his or her personal opinion on the evidence or the defendant's guilt; uses arguments calculated to inflame the passions or prejudices of the jury; diverts the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions on the consequences of the jury's verdict; and intentionally refers to or argues facts outside the record, other than those which are matters of common public knowledge. State v. Goltz, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003).

For a defendant to be entitled to a new trial on the basis of allegedly improper remarks during the closing argument, the comments must be shown to have prejudiced the case by affecting the jury's verdict. Middlebrooks, 995 S.W.2d at 559. In determining whether this occurred, we consider the following factors: (1) the conduct viewed in light of the circumstances and facts in the case; (2) any curative measures taken by the trial court and the prosecution; (3) the prosecutor's intent in making the improper statements; (4) the cumulative effect of the prosecutor's statements and other errors in the record; and (5) the relative strength and weakness of the case. Id. at 560.

We agree with the State that the prosecutor's comments, viewed in context, were not improper. Accordingly, we conclude that the defendant is not entitled to relief on the basis

of this issue.

## VI. Sentencing

As his last issue, the defendant contends that the trial court erred by imposing the maximum sentences for the offenses without adequately considering his potential for rehabilitation or factors in mitigation.

Under the 2005 amendments to the sentencing act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2010).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. In State v. Caudle, our supreme court clarified that the "abuse of discretion standard, accompanied by a presumption of

reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012).

At the conclusion of the sentencing hearing, the trial court first noted that the defendant was not eligible for probation for his Class A felony conviction. The court then found two enhancement factors applicable: the defendant's previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range and the defendant's failure before trial or sentencing to comply with the conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(1), (8). The trial court found no applicable mitigating factors, although it did note for the record the witnesses who appeared on the defendant's behalf. The court, therefore, sentenced the defendant to concurrent terms of forty years for the Class A felony cocaine conviction, four years for the Class E felony marijuana conviction, and eleven months, twenty-nine days for the Class A misdemeanor drug paraphernalia conviction.

The record reflects that the trial court imposed the maximum sentences for the defendant's offenses after proper consideration of the purposes and principles of our sentencing act and consideration of any applicable enhancement or mitigating factors. See Bise, 380 S.W.3d at 706. Accordingly, we affirm the sentences imposed by the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE